# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 18, 2012

## STATE OF TENNESSEE v. TROY LEE MCDONALD

**Direct Appeal from the Circuit Court for Hickman County**
**No. 10-5007CR      James G. Martin, III, Judge**

**No. M2011-01872-CCA-R3-CD - Filed June 8, 2012**

After a bench trial, the Hickman County Circuit Court convicted the appellant, Troy Lee McDonald, of sexual battery, a Class E felony. The trial court sentenced him to two years to be served as thirty days in confinement and the remainder on supervised probation. On appeal, the appellant contends that the trial court should have granted his request for full probation. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Troy Lee McDonald.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael Jay Fahey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The record reflects that in February 2010, the Hickman County Grand Jury indicted the appellant for sexual battery, a Class E felony. According to the indictment, on June 3, 2009, the appellant had unlawful sexual contact with the then fourteen-year-old victim.

At the appellant's February 2011 bench trial, Adam Cole Mayberry testified that he was a junior at Hickman County High School. One day in the summer of 2009, Mayberry

was at the public swimming pool in Centerville. He was sitting at a picnic table when the appellant approached and asked Mayberry if he wanted to rub sunscreen on the appellant's back. Mayberry said the appellant's question made him "[k]ind of uncomfortable." He told the appellant that he had some spray-on sunscreen, and he sprayed some of it on the appellant's back. Later, Mayberry was playing basketball in the pool with his friends. The appellant was playing basketball in the pool with them. Mayberry did not invite the appellant to play basketball and did not know how the appellant got involved in the game. At some point, Mayberry saw the victim and noticed she was upset.

On cross-examination, Mayberry testified that the victim was his friend and that he had seen the appellant at the pool once or twice before that day. He acknowledged that everyone playing basketball was "banging against each other." Mayberry was not afraid of the appellant and did not complain to anyone about him.

The then sixteen-year-old victim testified that she was a sophomore at Hickman County High School. One day in the summer of 2009, the victim went to the public swimming pool in Centerville with her friends. She arrived at the pool about noon and put her personal items on a table under the pavilion. The victim got into the pool and saw the appellant throwing a football with another male. The victim and her girlfriends began playing basketball in the pool with some boys they knew from school. The appellant was playing basketball in the pool with them and was standing in front of and to the left of the victim. The victim said he was about an "arm's distance" away from her. She said that she looked down to fix her bikini top and that the appellant put his right arm around her and grabbed her left breast. She looked up and saw him smiling at her. She said that she was shocked and "really uncomfortable," that she "broke free" from him, and that she got out of the pool. The victim was shaking, scared, and did not know what to do. She told her friends about the incident and a former teacher, Karen Cost, who told her to tell someone. The victim went to the pavilion to get her shoes and saw the appellant sitting on a bench. She said that he asked her if she was going to swim anymore and that she told him no. She said that he asked her why and that she told him, "'Because.'" She said that the appellant asked her if she wanted to walk to the Subway restaurant, "just me and you," and that she told him she could not leave the pool. She said he told her, "'Your bathing suit [bottoms] are in your crack.'" The victim told Tony Roder about what had happened in the pool, and Roder told the victim not to leave. The victim said that she had seen the appellant at the pool once or twice before that day and that she had not returned to the pool since the incident because she was scared.

On cross-examination, the victim acknowledged that prior to telling Roder about the incident, she and her friends were planning to go to Subway to eat. She also was planning to telephone her father and tell him what had happened. She acknowledged that the

basketball game involved contact with the other players. The victim said that when she first felt a hand on her breast, she thought one of the boys was "playing around." However, when she looked up, she realized the appellant was touching her. She acknowledged that she and the appellant were playing on opposing teams, that they were under the basket, and that the appellant was "guarding" her. She also acknowledged that the appellant's hand was on her breast over her bathing suit. The victim initially thought the appellant had touched her accidentally. However, when she saw him smiling at her, she knew it was not an accident. The victim immediately got out of the pool. She said she had thought it was odd that "an older gentleman" wanted to play basketball with a group of kids. She acknowledged that she prepared for trial by reading over her statement to police.

Chance Proctor, a tenth grader at Hickman County High School, testified that on the day in question, he began playing basketball in the pool with the other kids and the appellant. He said that the basketball went toward the victim, that he saw the appellant grab her left breast, and that the appellant's actions "creeped [him] out." Proctor did not want to play basketball with the appellant anymore and went to play with some other friends.

On cross-examination, Proctor testified that he should have reported the incident. He acknowledged that he did not report it because he did not know if the appellant touched the victim intentionally. About an hour later, the victim and the police approached Proctor. Proctor reported what he had seen and gave a statement. Proctor acknowledged that according to his statement, he was not playing basketball in the pool when he saw the appellant touch the victim.

Tony Ray Roder testified that he was a teacher in Hickman County and used to manage the public swimming pool in Centerville during the summer. He said that one day in 2009, the victim came to him and seemed "a little shocked, [in] disbelief kind of." Based on what she told him, Roder telephoned the police.

On cross-examination, Roder testified that the victim claimed someone grabbed her while she was playing basketball. Roder asked the victim if she was sure the appellant did not touch her accidentally. He said the victim told him, "I don't think so, because he grabbed me, and I kind of looked at him, he grinned at me and smiled at me, and then he turned away." He acknowledged that the victim was not crying.

Officer Charles Pierce of the Centerville Police Department testified that on June 3, 2009, he responded to a call at the swimming pool and spoke briefly with Tony Roder. Officer Pierce also spoke with the victim, who told him what had occurred in the pool and pointed out the appellant. The appellant agreed to speak with the officer and said he did not recall touching anyone. The appellant told Officer Pierce that he had sustained a head injury

when he was young and that he had problems with short-term memory.

By agreement of the parties, the State introduced into evidence a statement written by Mary Beth Copley, who was a lifeguard at the swimming pool in June 2009. According to the statement, on June 2, 2009, a man asked Copley to rub suntan lotion on his back. Copley said she was "caught off guard," "didn't want to be mean," and put lotion on the man's back. She said in the statement that the man "made a comment how he wasn't trying to be perverted, but he was coming off that way to me."

Peggy Hall, the appellant's mother, testified for the appellant that when he was thirteen years old, he was hit by car while he was riding his bicycle. The appellant was in a coma for nine weeks, was completely paralyzed on his left side, and was not expected to live. Hall said that the appellant was "like a child in a man's body," that he was receiving disability payments, and that he was unemployed. The appellant lived in an apartment, but his memory was not good, and his mother handled all of his finances. She acknowledged that he had been arrested previously but said that she did not think he had any prior convictions. He told his mother about what happened at the pool on June 3, 2009, and told her that he did not do anything to the victim.

On cross-examination, Hall acknowledged that the appellant had a driver's license and had been married previously. She said that the appellant also had a grown son and that she raised her grandson "probably . . . myself." The appellant did not take any medication.

Upon being questioned by the trial court, Hall testified that the appellant went through the eleventh grade and obtained his GED. He had been married twice, once for two years and once for ten years. She said the appellant had tried to work but could not keep a job.

The then forty-four-year-old appellant testified that he was unemployed, had been receiving disability payments for about nine months, and had held at least one hundred jobs. He said he could not keep a job because his employers expected too much of him, so he was fired or quit. The appellant had a driver's license. On the day in question, he rode his bicycle to the public pool and paid the three-dollar admission fee. He acknowledged that he asked someone to rub lotion on his back but said he did so because he could not reach some parts of his back. The appellant volunteered to play basketball; the kids did not ask him to play. He said he did not touch the victim's breast, did not make any comments to her about her bathing suit, and did not ask her to go to Subway. He said that he used all of his money to pay his admission fee to the pool and that he did not have any money to take her to the restaurant.

On cross-examination, the appellant said that touching the victim's breast would have

been "sick." He said that he did not remember asking a lifeguard to rub suntan lotion on his back and that the lifeguard never rubbed anything on him. He said he asked "a guy sitting on the bench" to rub lotion on his back. The "guy" said "no" but sprayed some lotion on the appellant, and the appellant thanked him. The appellant had heard that the kids at the pool were going to get him into trouble. Therefore, he did not get close to them during the basketball game. He acknowledged that he told Officer Pierce he had been banned from the pool two years earlier for asking someone to rub suntan lotion on his back. He said he considered the ban to remain in effect for the rest of that summer only. The trial court found the appellant guilty of sexual battery.

At the appellant's sentencing hearing, Peggy Hall again testified that a car hit the appellant when he was thirteen years old, that he was in a coma for nine weeks, and that he was completely paralyzed on his left side. The appellant was home-schooled for one year while he recovered. She said that the appellant never emotionally matured and that he was "a socially inept adult." Other adults did not want to have anything to do with him because he did not act like an adult or have the responsibilities of an adult. The appellant acted more like a teenager, but teenagers tended to be afraid of him. Hall said that she would help the appellant with the conditions of his sentence and that she would help the court supervise him. She said that she did not think incarceration would "help him in the least" and that he needed counseling for his anger and to understand boundaries.

On cross-examination, Hall testified that the appellant was living in an apartment complex where most of the residents were disabled. The appellant lived alone but had a girlfriend.

The appellant's presentence report was introduced into evidence. In the report, the appellant stated that he dropped out of high school after the eleventh grade but earned his GED. The appellant also stated that his health was "fair" due to low blood pressure, vitamin D deficiency, and physical disabilities. The appellant described his mental health as "fair" and said he suffered from low self-esteem. The appellant reported that he had never abused alcohol or drugs but that he experimented with marijuana as a teenager. According to the report, the appellant had been married twice and had a twenty-three-year-old son. The appellant was employed on a semi-regular basis until he began receiving disability payments in June 2010. The report shows that the appellant has a 2005 conviction for possession of drug paraphernalia. The report also shows that he was charged with domestic assault involving his second wife. Although the charge was later dismissed, his wife obtained an order of protection against him. A psychosexual risk assessment was completed as part of the appellant's presentence report. Donna L. Moore, the psychologist who evaluated the appellant, concluded that he was a moderate risk for engaging in sexually inappropriate behavior in the future and recommended sex offender treatment.

The trial court noted that it had considered the presentence report, including the appellant's criminal history, the fact that he was still under an order of protection, and the psychosexual risk assessment. The trial court also noted that it had considered enhancing and mitigating factors. The trial court applied enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," but gave the factor very little, if any, weight. Tenn. Code Ann. § 40-35-114(1). The trial court also applied enhancement factor (4), that the victim "was particularly vulnerable because of age or physical or mental disability," but gave the factor "marginal consideration" because the victim in this case was fourteen years old. Tenn. Code Ann. § 40-35-114(4). The trial court also noted that it had considered the appellant's statement to police and testimony, which demonstrated that he knew touching the victim was wrong. Finally, the court noted that it had considered the statistical information provided to the court, the nature of the criminal conduct involved, and the appellant's potential for rehabilitation. The court found that confinement was necessary to avoid depreciating the seriousness of the offense and sentenced the appellant to two years to be served as thirty days in confinement and the remainder on supervised probation.

## II. Analysis

The appellant contends that the trial court erred by denying his request for full probation. The State argues that trial court properly ordered the appellant to serve thirty days in confinement. We agree with the State.

Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is

ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this criteria. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the trial court imposed a sentence of split confinement, which is an alternative sentence. See Tenn. Code Ann. § 40-35-306(a); State v. Williams, 52 S.W.3d 109, 120 (Tenn. Crim. App. 2001). However, "[t]he determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Therefore, an appellant seeking full probation bears the burden of establishing his suitability for full probation. Id.; see also Tenn. Code Ann. § 40-35-303(b). To prove his suitability, the appellant must establish that granting full probation will "subserve the ends of justice and the best interest of both the public and the [appellant]." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (internal quotation marks and citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 8 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense,

and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477.

The appellant is a Range I, standard offender convicted of a Class E, felony; therefore, he is considered to be a favorable candidate for alternative sentencing. However, the trial court ordered the appellant to serve thirty days in confinement because the court determined that granting full probation would depreciate the seriousness of the offense.

In denying full probation to avoid depreciating the seriousness of the offense, the criminal act should be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. Zeolia, 928 S.W.2d at 462. In our view, the facts of this case do not satisfy that criteria.

The record reflects that the trial court also denied the appellant's request for full probation because the court was concerned about the appellant's lack of potential for rehabilitation. Specifically, the trial court stated as follows:

> And I've looked at the statement that Mr. McDonald has made to the police, and I've considered that. And I understand that he absolutely denies that he has engaged in this misconduct. And that gives the Court real concern, because Dr. Moore was very clear in her report that until Mr. McDonald acknowledges that he is and has engaged in inappropriate behavior, then the likelihood of him being able to learn to manage that behavior, to counter that behavior is diminished. He has to acknowledge his problem before he can solve his problem; and that was of serious concern to Ms. Moore or Dr. Moore when she prepared her report, and it's of serious concern to the Court's consideration. And one of the things the Court's required to do is take into consideration the potential for rehabilitation or treatment.
>
> . . . .
>
> And then . . . the potential or lack of potential [for] rehabilitation and treatment. Because I'm very concerned about Mr. McDonald's current view that he hasn't done anything wrong. He's clearly wrong. He's in error on that point, and

until he acknowledges that what he did to [the victim] on June [3rd], 2009 is wrong, then I'm concerned about the safety of others, I'm concerned about his own ability to be rehabilitated.

The appellant contends that a defendant should not have to admit guilt in order to avoid the application of lack of potential for rehabilitation and that a trial court's denial of full probation based upon such circumstances infringes upon a defendant's right to trial and appellate review. Our supreme court has stated that "there is no rule in this State requiring a Defendant to admit his guilt in order to seek probation." State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). However, in this case, the trial court's statements demonstrate that, in addition to the appellant's unwillingness to admit his guilt, the court also found the appellant to be untruthful in his testimony, noting that the appellant denied making any comments to the victim about her bathing suit or asking her to go with him to Subway. We note that the appellant also denied asking Mary Beth Copley to rub suntan lotion on his back, behavior that already had resulted in his being banned from the swimming pool two years prior to this incident. A defendant's false testimony is probative to his potential for rehabilitation. United States v. Grayson, 438 U.S. 41, 50 (1978); see also Zeolia, 928 S.W.2d at 463 (stating that a defendant's "credibility and willingness to accept responsibility for his crime are circumstances germane to his rehabilitation potential"). Therefore, we agree with the trial court that the appellant's potential for rehabilitation is poor and conclude that the trial court properly denied his request for full probation.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE